| | |
|---|---|
| BOYKIN ANCHOR COMPANY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AT&T CORPORATION; LARRY ) <br> WONG; AT&T SERVICES, INC.; AT&T ) <br> TELEHOLDINGS, INC.; AMERITECH ) <br> SERVICES, INC.; and AT&T, INC., ) <br> ) <br> Defendants. ) | ORDER |

This matter comes before the court upon the motion to dismiss filed by defendants Larry Wong ("Wong") and AT&T Services, Inc. ("AT&T Services") (DE # 22). Plaintiff timely responded in opposition, and defendants replied. In this posture, the issues raised are ripe for adjudication. For the reasons that follow, defendants' motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff filed this action in Wake County Superior Court on November 19, 2010, asserting state law claims for unfair and deceptive trade practices, gross negligence, negligence, and libel. The action was removed to this court on December 29, 2010. Following removal, plaintiff filed an amended complaint, adding a federal Lanham Act claim under 15 U.S.C. § 1125(a)(1)(b), and naming a number of additional defendants.[1]

---

[1] By oral order pronounced April 14, 2011, defendants AT&T Corporation, AT&T Teleholdings, Inc., Ameritech Services, Inc., and AT&T, Inc. were dismissed from this action. The only remaining defendants are Wong and AT&T Services, who are referred to collectively as "defendants" throughout this order.

On February 15, 2011, defendants moved to dismiss plaintiff's Lanham Act, gross negligence, and negligence claims in their entirety, and to dismiss plaintiff's libel claim in part as barred by the statute of limitations. Plaintiff responded on March 28, 2011, conceding that its libel claim should be dismissed in part but opposing dismissal of any of its other claims. Defendants timely replied.

## STATEMENT OF THE FACTS

The relevant facts, as alleged in the complaint, are as follows. Plaintiff, a North Carolina corporation, manufactures seismic anchors for the telecommunications industry. These anchors secure digital switching cabinets to concrete floors, and must be strong enough to hold equipment in place during an earthquake. Plaintiff's anchors, which meet relevant standards set by independent evaluators, have been used in the telecommunications industry since 1996, and have been approved for use by AT&T since 2002.[2]

AT&T is a leader of the telecommunications industry and, it can be assumed from the allegations of the complaint, is one of the primary drivers behind the use of anchors used to secure digital switching cabinets. Plaintiff's sole competitor for AT&T-related business is Hilti, Inc. ("Hilti"). Hilti is also plaintiff's primary competitor for other telecommunications business. According to plaintiff, Hilti produces anchors which are of inferior quality yet cost approximately 40% more than its own Boykin/Seisco anchors.

Wong, an employee of AT&T Services, is an industry insider whose advice has an impact on what products are used by telecommunications companies, including with respect to seismic

---

[2] Seisco, LLC is the sole distributor of plaintiff's anchors. Accordingly, those anchors are referred to by the parties (and in the telecommunications industry) as either "Seisco anchors" or "Boykin/Seisco anchors." The court will adopt this nomenclature.

2

anchors. He has developed a personal relationship with employees of Hilti. On May 21, 2008, Wong wrote an email referring to plaintiff's anchors in which he stated that there were "concerns over product performance based on testing conducted years ago." As recently as March 1, 2010, Wong recommended in internet postings that "Seisco anchors should not be used because of performance questions." Finally, on March 22, 2010, Wong wrote an email stating that consumers "should only be using Hilti anchors per most recent AT&T requirements."

Despite Wong's comments, there are no performance questions regarding Boykin/Seisco anchors, which continue to meet all relevant specifications and requirements. Moreover, there is no AT&T requirement that Hilti anchors be used exclusively. But because of Wong's false statements and reputation in the telecommunications industry, distributors have stopped buying and distributing Boykin/Seisco anchors. In other words, Wong's comments have restricted plaintiff's ability to compete with Hilti in the market for seismic anchors.

## DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further

3

Case 5:10-cv-00591-FL   Document 41   Filed 05/19/11   Page 3 of 10

factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor will the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

B.  Analysis

   1.  Libel Claim

The court begins by finding consensus that any libel action based on Wong's email of May 21, 2008, is barred by the statute of limitations. North Carolina law imposes a one-year statute of limitations for libel actions. See N.C. Gen. Stat. § 1-54(3). Plaintiff did not commence this action until November 19, 2010, more than two years after the allegedly libelous comment. Although "a motion to dismiss filed under [Rule] 12(b)(6) . . . generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc), here the parties agree that the pleadings themselves are sufficient to establish that any libel action based on the May 2008 email would be untimely.

Where plaintiff alleges at least one libelous statement within the statute of limitations, the parties agree that dismissal of plaintiff's claim in its entirety would not be appropriate. The court also declines to accept defendant's invitation to dismiss the libel claim "in part," which appears to the court to be little more than an attempt to dispose of an *allegation* rather than the underlying claim.[3] Cf. Collins v. Cottrell Contracting Corp., 733 F. Supp. 2d 690, 698 (E.D.N.C. 2010) (holding that a party may not use a motion for summary judgment in an attempt "to dispose of only

---

[3] Plaintiff did not allege separate libel claims for each of the allegedly defamatory statements, but simply included one libel claim that incorporated all of the statements. Indeed, plaintiff's only caveat to the dismissal "in part" of his libel claim is its argument that the relevant allegations "should not be dismissed as to [the] Unfair and Deceptive Trade Practices claim." (Pl.'s Mem. Opp. Mot. to Dismiss 6.) Plaintiff further states that while it "does not oppose the factual assertions not being applied to [its] [d]efamation claim, . . . [it] vehemently opposes the factual assertions being dismissed as to any of [its] other claims." (Id. at 7.)

4

a factual allegation or element of a single indivisible claim for relief"). The parties are in agreement that the statute of limitations does not allow plaintiff to rely on the 2008 email to support its libel claim, and no further action of the court is required at this juncture.

2. Lanham Act Claim

Plaintiff's Lanham Act claim arises under § 43(a) of that act, which is codified at 15 U.S.C. § 1125(a). That provisions states, in relevant part, that

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Id. § 1125(a)(1)(B).

Under established Fourth Circuit law, a plaintiff attempting to bring a false advertising claim under the Lanham Act must allege that

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

PBM Prods., LLC v. Mead Johnson & Co., --- F.3d ----, 2011 WL 1491066, at *5 (4th Cir. 2011) (quoting Scotts Co. v. United Indus., 315 F.3d 264, 272 (4th Cir. 2002)).

Four of the five elements of the Fourth Circuit's test appear to have been adequately pleaded. Plaintiff has alleged that Wong's misrepresentation influenced purchasing decisions, that his specific

advice not to purchase Boykin/Seisco anchors because of "performance issues" had the tendency to deceive its intended audience, that the statement was placed in interstate commerce (via the internet and email), and that plaintiff has suffered an injury in the form of decreased sales and an inability to compete. Defendants argue only that plaintiff's allegations fail the first prong of the test. They contend that the statements were not made as part of a "commercial advertisement."

Although the Fourth Circuit has not expressly defined "commercial advertisement," other courts use the four-part test set forth by the Southern District of New York in Gordon & Breach Science Publishers v. American Institute of Physics, 859 F. Supp. 1521 (S.D.N.Y. 1994). Under that test, a statement is a "commercial advertisement" only if it is "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . (4) [which is] disseminated sufficiently to the relevant purchasing public." Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996) (quoting Gordon & Breach, 859 F. Supp. at 1535-36); accord Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc., 332 F.3d 6, 19 (1st Cir. 2003); Rice v. Fox Broad. Co., 330 F.3d 1170, 1181 (9th Cir. 2003); Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1273-74 (10th Cir. 2000); Applied Med. Res. Corp. v. Steuer, 527 F. Supp. 2d 489, 493 (E.D. Va. 2007); Neurotron Inc. v. Am. Ass'n of Electrodiagnostic Med., 189 F. Supp. 2d 271, 276 (D. Md. 2001), aff'd 48 F. App'x 42 (4th Cir. 2002) (unpublished).

Plaintiff urges the court not to adopt the four-part Gordon & Breach test, or to at least decline to adopt the prong requiring that the parties be in commercial competition with one another. See, e.g., Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 58 (2d Cir. 2002) (adopting the first, third, and fourth elements of the Gordon & Breach test, but declining to adopt

6

the second element because it was unnecessary for purposes of the appeal). Although plaintiff is correct that there is no binding Fourth Circuit precedent on this question, persuasive authority from other circuits weighs strongly in favor of this court's adoption of the four-part test.[4] Additionally, plaintiff has offered no alternative test or definition of "commercial advertisement." Accordingly, as have a number of other courts in this Circuit, this court adopts the Gordon & Breach test.

Plaintiff's Lanham Act claim rests exclusively on Wong's internet postings stating, in response to a consumer's question as to what anchors should be used to secure digital switching equipment to a concrete floor, that "Seisco anchors should not be used because of performance questions." These postings fail the first three elements of the Gordon & Breach test. First, Wong's statement is not commercial speech, because it is not "speech that does no more than propose a commercial transaction," see United States v. Edge Broad. Co., 509 U.S. 418, 426 (1993), or speech that is "related solely to the economic interests of the speaker and its audience," see City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 422 (1993) (internal quotation marks omitted). Second, neither AT&T Services nor Wong is in commercial competition with plaintiff.[5] The former is a consumer of plaintiff's products, or an interested third party; the latter is nothing more than an employee attempting to influence the decisions of his employer and others in the industry to use a specific product. Cf. Huntingdon Life Sciences, Inc. v. Rokke, 978 F. Supp. 662, 667 (E.D. Va.

---

[4] In fact, the commercial competition element in particular is consistent with the Fourth Circuit's understanding of the Lanham Act as a remedy for a "plaintiff who meets the burden of proving that its commercial interests have been harmed by a *competitor's* false advertising." Made in the USA Found. v. Phillips Foods, Inc., 365 F.3d 278, 281 (4th Cir. 2004) (quoting Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1139 (4th Cir. 1993)) (emphasis added).

[5] Plaintiff argues that Wong is a direct competitor of plaintiff who is interested in influencing consumers to buy Hilti anchors because he has developed a personal relationship with employees of Hilti. It is not surprising that Wong, who works in the telecommunications industry, has developed personal relationships with others involved in that industry. The court also accepts as true plaintiff's allegations that Wong's statements were aimed at influencing consumers to buy Hilti anchors rather than Boykin/Seisco anchors. These facts, standing alone, do not make Wong an agent of Hilti's, nor can the court conclude that he is in "commercial competition" with plaintiff.

7

1997) (holding that an advocacy group that urges the use of products that are not tested on animals is not in competition with a laboratory that performs such tests). Third, there is no indication that Wong's internet postings were designed to influence consumers to buy products or services provided by Wong or AT&T Services, as opposed to Hilti.

Under the relevant four-factor test, Wong's internet postings were not a "commercial advertisement" or other promotion. Accordingly, § 43(a) of the Lanham Act does not apply to the allegations, and defendants' motion to dismiss this claim is GRANTED.

### 3. Negligence and Gross Negligence

Plaintiff alleges that defendants acted negligently by making false statements about Boykin/Seisco anchors, and then failing to retract these statements once notified of their falsity. Defendants argue that these claims are merely attempts to re-plead plaintiff's libel claim under different headings. Specifically, defendants contend that there is no general duty of care to avoid making untrue statements that could result in economic harm to a third party; such statements are governed exclusively by the common law of defamation.

After reviewing plaintiff's complaint, the court agrees that no negligence or gross negligence action has been alleged. The allegations are concerned solely with defendant's publication of allegedly false information which caused damage to plaintiff's business reputation and resulted in economic loss to plaintiff. In other words, plaintiff's action fits squarely within the confines of a well-pleaded defamation action. See Cummings v. Lumbee Tribe of N.C., 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008) (defining libel as "any false written publication to a third party" and noting that it is actionable without proof of malice if the false statements "prejudice [plaintiff] in his reputation, office, trade, business or means of livelihood"). The allegations do not, on the other hand, fit within

8

the contours of a negligence action, as plaintiff has pointed to no case law suggesting that an individual has a duty to avoid making false statements about others separate and distinct from conduct that is actionable as defamation. See Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995) (requiring a plaintiff asserting a negligence action to plead existence of a legal duty, breach of duty, proximate cause, and damages).[6]

Courts have traditionally been very cognizant of the distinctions between defamation on the one hand and negligence on the other, and have resisted efforts by plaintiffs to recast an action sounding in the former into one sounding in the latter. For example, in Newcombe v. Adolf Coors Co., the Ninth Circuit noted that "a claim for negligent publication is essentially the same as either a claim for misappropriation or for defamation, and . . . the constitutional and statutory principals regarding those standards cannot be circumvented by artful pleading." 157 F.3d 686, 695 (9th Cir. 1998). Similarly, in Talbert v. United States, the Fourth Circuit held that a plaintiff's claim for negligent maintenance of records under the Federal Tort Claims Act was barred by that statute's prohibition on liability for defamatory statements because "[a]rtful pleading cannot alter the fact that [plaintiff's] claim 'resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly.'" 932 F.2d 1064, 1066-67 (4th Cir. 1991) (quoting Jimenez-Nieves v. United States, 682 F.2d 1, 6 (1st Cir. 1982)) (second alteration in original).

Here, too, the court is compelled to conclude that plaintiff's allegations place his "negligence" and "gross negligence" claims in the heartland of defamation. The court must also

---

[6] " Gross negligence" has the same basic elements as negligence, but requires either "intentional wrongdoing or deliberate misconduct affecting the safety of others," such as "when the act is done purposely and with knowledge that such act is a breach of duty to others." Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001).

reject plaintiff's attempts to draw a distinction between libelously publishing the false statements and "negligently" failing to retract them. Plaintiff has provided no legal support for such a distinction. Accordingly, defendants' motion to dismiss plaintiff's negligence and gross negligence claims is GRANTED.

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by defendants Larry Wong and AT&T Services, Inc. (DE # 22) is GRANTED IN PART and DENIED IN PART. Plaintiff's Lanham Act claim (Count II), gross negligence claim (Count III), and ordinary negligence claim (Count IV) are DISMISSED. Plaintiff's claims for unfair and deceptive trade practices (Count I) and libel (Count II), and plaintiff's requests for injunctive relief (Counts VI and VII), remain pending against defendants Larry Wong and AT&T Services, Inc.

SO ORDERED, this the 19th day of May, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge