IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-591-FL

| | |
|---|---|
| BOYKIN ANCHOR COMPANY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| LARRY WONG and AT&T SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Plaintiff's amended motion to compel further production of documents. [DE-58]. Defendants have responded. [DE-66]. Accordingly, the matter is ripe for adjudication.

## I. BACKGROUND

This action was filed by Plaintiff Boykin Anchor Company, Inc. ("Boykin"), a North Carolina corporation, in state court on 19 November 2010 against Defendants Larry Wong and AT&T Services, Inc. (collectively "Defendants") and removed to this court on 29 December 2010. Following removal, Plaintiff filed an amended complaint, asserting additional causes of action against a number of new defendants. The court subsequently dismissed some of the parties and claims, leaving Defendant Larry Wong ("Wong") and Defendant AT&T Services, Inc. ("AT&T Services") as the remaining defendants and defamation and unfair or deceptive trade practices under the North Carolina Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, as the remaining claims. [DE-41].

Plaintiff manufacturers seismic anchors for use in the telecommunications industry. Seismic

anchors are used to secure digital switching cabinets to concrete floors. Pl.'s Compl. ¶ 9. Plaintiff's anchors are referred to in the telecommunications industry as "Seisco anchors" or "Boykin/Seisco anchors." *Id.* ¶¶ 8, 11. According to Plaintiff, its seismic anchors have been used in the telecommunications industry since 1996, and have been approved for use by AT&T Services since 2002. *Id.* ¶ 20. The claims brought by Plaintiff stem from alleged false or deceptive statements by Wong, a former AT&T Services employee regarding Plaintiff's product, which have adversely impacted Plaintiff's business.

Wong is alleged to have had influence over AT&T Services' selection of seismic anchors. *Id.* ¶ 27. In particular, Plaintiff alleges that on 21 May 2008, Wong wrote an email referring to Boykin's anchors in which he stated that there were "concerns over product performance based on testing conducted years ago." *Id.* ¶ 43 (emphasis omitted). Plaintiff alleges further that on 1 March 2010, Wong recommended in internet postings that "Seisco anchors should not be used because of performance questions." Finally, Plaintiff alleges that on 22 March 2010, Wong wrote an email stating that "[AT&T Services'] should only be using Hilti[, Inc.][1] anchors per most recent AT&T requirements." *Id.* ¶ 58. Plaintiff contends that as a result of Wong's false statements, distributors have discontinued buying and distributing Boykin/Seisco anchors. *Id.* ¶ 65.

On 27 April 2011, the court entered its Case Management Order ("CMO") [DE-38], directing the parties to, *inter alia*, complete all discovery by 31 December 2011. On 6 May 2011, Boykin served its First Request for Production of Documents ("RPDs") on Defendant. Pl.'s Am. Mot. Order Compel Defs.' Produc. Disc. ("Pl.'s Am. Mot. Compel") at ¶ 3 [DE-58]; Pl.'s First RPDs [DE-59.1,

---

[1] Hilti, Inc. ("Hilti") also produces seismic anchors and according to Plaintiff, is Boykin's sole competitor for AT&T-related business. Pl.'s Compl. ¶ 21.

2

DE-59.2]. Responses were served on Plaintiff on 11 July 2011, which included numerous general and specific objections. [DE-59.4, DE-59.5]. On 18 August 2011 and 8 September 2011, the court held telephonic discovery conferences with the parties regarding disputed discovery requests. According to the parties, while much of the dispute has been resolved and discovery has been produced, four of Plaintiff's discovery requests for the production of documents remain in dispute and are the subject of Plaintiff's motion.[2]

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for a broad scope of discovery:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). While the Federal Rules of Civil Procedure do not define "relevant information," the Federal Rules of Evidence define it as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 409 (D.Md. 2005) (quoting FED. R. EVID. 401); *see also EEOC v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 U.S. Dist. LEXIS 43070, at *10, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (explaining "[r]elevancy . . . has been broadly construed to encompass 'any possibility that the information sought may be relevant to the claim or defense of any party.'") (quoting *Merrill v.*

---

[2] Plaintiff's motion seeks an order compelling both Wong and AT&T Services to produce discovery as to RPD Nos. 14, 15, 29 and 32. Pl.'s Mot. at 1 [DE-58]. However, Plaintiff's brief discusses only those requests propounded on AT&T Services and makes no distinction between the requests to Wong and those to AT&T Services. Defendant advises that the four discovery requests at issue resemble RPD Nos. 14, 22, 23 and 27 propounded on Wong. Defs.' Mem. at 1 n.1.

3

*Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). Accordingly, the rules of discovery, including Rule 26, are liberally construed. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) (explaining "the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials") (citation omitted). The district court has "broad discretion" in the determination of relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). As the Fourth Circuit has explained, however, discovery is not limitless:

> On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit "the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2). Further, upon motion of a party and "for good cause shown," the court in the district in which a deposition is to be taken may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that the discovery not be had. FED. R. CIV. P. 26(c).

*Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004); *see also McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005) (noting "[d]iscovery is not limitless" and explaining "[t]he court has the discretion to protect a party from 'oppression' or 'undue burden or expense.'") (quoting FED. R. CIV. P. 26(c)).

A party's response to written discovery must either state that a document request is permitted or state an objection, providing the reasons for the objection. FED. R. CIV. P. 34(b)(2)(B). Objections to Rule 34 requests, however, must be stated specifically, and boilerplate objections simply regurgitating words and phrases from Rule 26 are unacceptable. *Mills v. East Gulf Coal Preparation*

*Co., LLC*, 259 F.R.D. 118, 132 (S.D. W. Va. 2009) (citing *Frontier-Kemper Constructors, Inc., v. Elk Run Coal Co.*, Inc., 246 F.R.D. 522, 528-29 (S.D.W.Va. 2007); *accord Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("Mere recitation of the familiar litany that . . . A document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice."); *but see Hager v. Graham*, No. 5:05-CV-129, 2010 U.S. Dist. LEXIS 42291, at *13, 2010 WL 1734881, at *5 (N.D. W. Va. Apr. 28, 2010) ("Though a general objection on vagueness, ambiguity, broadness, and excessive burden without more does not comply with the requirements of Rule 34, specific grounds in addition to the boilerplate is permissible.").

If a party fails to cooperate in discovery, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Rule 37(a)(4) provides that an incomplete answer or response "must be treated as a failure to . . . answer, or respond." Finally, the local rules of this district mandate that "[c]ounsel must also certify that there has been a good faith effort to resolve discovery disputes prior to the filing of any discovery motions." Local Civil Rule 7.1(c). Here, it is apparent both from the correspondence included with the motion as well as this court's participation with the parties in telephonic discovery conferences that the parties have attempted to resolve their discovery dispute prior the filing of Plaintiff's amended motion to compel. Before addressing each of Plaintiff's discovery requests and Defendants' responses thereto, the court notes that Defendants have either produced or agreed to produce the following discovery in response to Plaintiff's document requests: documents relating to AT&T Services' technical specifications and other

5

requirements for seismic anchors, and AT&T's selection of seismic anchors . . . [and] documents relating to Hilti[, including] statements, contracts entered into between AT&T Services and Hilti, documents relating to the performance or quality of both Hilti and Boykin anchors, documents describing AT&T Services' business decision to use Hilti anchors, communications among various AT&T personnel about seismic anchors which relate to Plaintiff, Seisco, LLC (Plaintiff's exclusive distributor), or Hilti, documents showing AT&T Services' practices or policies favoring the use of fewer strategic suppliers, and excerpts of approved products lists or minor materials lists referring to seismic anchors.

Defs.' Mem. at 4. As described, the materials appear to be probative of the Defendants' proffered reason for not selecting Plaintiff's seismic anchors and are reasonably calculated to lead to admissible evidence.

A.  Plaintiff's Request for Production of Documents No. 14

In RPD No. 14 to Defendant AT&T Services, Plaintiff seeks "any and all documents, contracts, purchase orders, e-mails, or other evidence that relates to vendor performance, product performance, cost and supply availability as reasons for choosing or barring a vendor or product." Plaintiff has proposed search terms which it believes will locate the documents Plaintiff seeks. *See* [DE-59.6, DE-59.8 through DE-59.11]. During the August 2011 telephonic conference, Plaintiff advised the court that it would limit this request "to the AT&T Services' department that handles seismic anchors." Pl.'s Mem. at 6.

Plaintiff's explanation regarding the relevance of the above categories of documents to his UDTPA claim is unclear. It appears Plaintiff contends that Defendant Wong, in stating Hilti anchors were chosen (1) based on product performance and availability of technical support and (2) pursuant to an AT&T policy requiring the use of Hilti anchors only, violated AT&T's internal policies prohibiting "sharp practices" (i.e., the "improper exercise of purchasing power ") as Defendant Wong's statements inflate requirements for seismic anchors and deliberately mislead suppliers

6

thereof. Plaintiff contends that RPD No. 14 will produce documents that "do not show a pattern of using product performance, availability and cost as reasons why [Defendants] chose or barred products" given the Seisco anchor meets AT&T's requirements, is on the AT&T "approved products list" and was previously used by AT&T Services.

Defendants object to the request as overly broad and burdensome, contending they have found thus far 58,741 files containing one or more of the search terms proposed by Plaintiff for RPD No. 14. Defs.' Mem. at 6 [DE-66]; Decl. of J. Troy Morris ("Morris Decl.")[3] ¶ 6 [DE-67]. Defendants contend also that even if the search was limited to the Procurement Department's team of contract managers who oversee seismic anchors, the search would include documents related to over 20,000 individual part numbers. Decl. of Donald Palmer ("Palmer Decl.")[4] ¶ 7 [DE-68]. Defendants contend further that RPD No. 14 is so broad that the burden of responding fully to that request would extend beyond the Procurement Department to "subject matter experts and stakeholders spread throughout the company who are responsible for and have input into purchasing decisions." Palmer Decl. ¶ 8.

As to the document request in its original form, the court finds the request is overly broad and without reasonable limitation in scope as AT&T Services' procurement policies for products other than seismic anchors is irrelevant. Plaintiff's UDTPA claim rests on Wong's treatment of Plaintiff's seismic anchor; thus, requests for information regarding AT&T Services' rationale for selecting other products and vendors of such products is not probative of Plaintiff's allegation that

---

[3] Mr. Morris is employed as a data analyst in AT&T Services' Information Technology Regulatory & Legal Department. Morris Decl. ¶¶ 2-3 [DE-67].

[4] Mr. Palmer is employed as an area manager in AT&T Services' Procurement Department. Palmer Decl. ¶ 2 [DE-68].

7

Wong deceived AT&T suppliers by instructing them to use only Hilti anchors. As for Plaintiff's modified request, Plaintiff contends it is directed to obtain documents demonstrating there was no pattern of using product performance, availability and cost as reasons AT&T Services chose or barred products. The modified request remains overly broad. Even if true with respect to the myriad of other AT&T Services' products, Plaintiff has not demonstrated such evidence is probative of the reasons proffered for the non-selection of Plaintiff's product.

The court finds the documents produced or to be produced as described by Defendants, and detailed above, are responsive to Plaintiff's document request and probative of Plaintiff's theory of liability. Plaintiff seeks information regarding AT&T Services' procurement policies regarding seismic anchors and documentation that Defendants have agreed to produce, including information regarding the selection of seismic anchors and the decision to use another supplier's seismic anchors, will provide such information. Accordingly, the court DENIES Plaintiff's motion to compel as to RPD No. 14.

B.  Plaintiff's Request for Production of Documents No. 15

In RPD No. 15 to Defendant AT&T Services, Plaintiff seeks "any and all documents, contracts, purchase orders, or other evidence that relates to AT&T's relationship with Hilti, Inc." In Plaintiff's memorandum, Plaintiff concedes the request is overly broad and narrows the request to "contracts and documents relating to the relationship between AT&T and Hilti regarding seismic anchors or any documents relating to an overall agreement between AT&T and Hilti."[5] Plaintiff

---

[5] Defendants contend they have already agreed to produce contracts with Hilti relating to seismic anchors, documents describing the quality or performance of Hilti anchors, documents relating to testing of Hilti anchors and correspondence among key AT&T Services employees relating to Hilti anchors. Defs.' Mem. at 8. Furthermore, Defendants have produced an contract between Hilti, Inc. and SBC Services, Inc. for Firestop Materials. *Id.* (citing Palmer Decl., Ex. A.)

8

states further that it "is willing to limit this request to the AT&T Services' department that handles seismic anchors." Pl.'s Mem. at 8. Plaintiff contends these documents are relevant to its UDTPA claim because they will provide insight into "the relationship that exists between AT&T and Hilti to motivate Larry Wong to make deceptive statements in violation of AT&T internal policies." *Id.*

Defendants advance numerous grounds for denying production of these documents. First, Defendants contend that even if Wong's statements violated AT&T Services' internal policies, Plaintiff has failed to offer any explanation as to how such a violation gives rise to a UDTPA claim. Defs.' Mem. at 8. Next, Defendants contend that Plaintiff's revised request remains overly broad, burdensome and expensive as AT&T Services' relationship with Hilti encompasses dozens of products and thus the request "could lead to the production of thousands of documents" which are wholly irrelevant to the UDTPA or defamation claims. *Id.* at 9. Finally, Defendants contend that Plaintiff fails to explain how documents never reviewed by Defendant Wong "possibly motivated him to make 'deceptive statements.'" *Id.*

Plaintiff believes Wong has inflated AT&T Services' seismic anchor requirements, misled Boykin and endorsed Hilti, violating AT&T Services' policy. Plaintiff seeks the requested documents to explore the relationship between Hilti and AT&T Services and Wong's motivation to make allegedly deceptive statements in violation of AT&T Services' policy. Documents relating to an agreement with Hilti regarding the purchase or selection of its seismic anchors would be probative of Wong's motivation. However, an agreement or contracts between AT&T Services and Hilti relating to products other than seismic anchors is not probative of Wong's motivation.

Here, Defendant states that it has already produced an agreement between Hilti and SBC Services, Inc., regarding firestop materials and the amendments thereto which include information

9

regarding seismic documents, as well as documents describing AT&T Services' decision to use Hilti anchors. *See* Defs.' Mem. at 4, 8 n.3; Palmer Aff. ¶ 9. As described, documents produced or those Defendants have agreed to produce, detailed earlier in this order, are responsive to Plaintiff's request and probative of Plaintiff's theory of liability. Accordingly, the court DENIES Plaintiff's motion to compel as to RPD No. 15.

C.  Plaintiff's Request for Production of Documents No. 29

In RPD No. 29 to Defendant AT&T Services, Plaintiff seeks "any and all approved products lists before and after the merger of SBC and AT&T."[6] Plaintiff contends all approved products lists – not just those relating to seismic anchors – are directly relevant to its UDTPA claim because the information therein will show that Defendants "are unfairly excluding Boykin from the seismic anchor industry." Pl.'s Mem. at 10.

Defendants contend they have already produced lists of approved products in the possession of AT&T Services that refer to seismic anchors. Decl. of Bon Pipkin ("Pipkin Decl.") ¶ 7 [DE-69]. In particular, on 22 September 2011, Defendants produced excerpts of "various versions" of the Minor Materials Lists referencing seismic anchors. Pipkin Decl. ¶ 8. Defendants have also produced excerpts of a now-defunct approved products list referencing seismic anchors, which was created and maintained by AT&T Corp.[7] Pipkin Decl. ¶ 9. Defendants redacted all information relating to its other products, claiming such information is irrelevant to Plaintiff's claims for libel and unfair and deceptive trade practices. Defs.' Mem. at 10. Finally, Defendants contend there is "no central

---

[6] According to Defendants, Plaintiff has agreed to limit this request to documents created between 2005 and present. Defs.' Mem. at 9.

[7] AT&T Corp. created an approved products list prior to its 2005 merger with SBC Communications, Inc., to which AT&T Services is the successor in interest. Pipkin Decl. ¶ 9.

repository" of approved products. Rather, individual departments within AT&T Services, as well as "subject matter experts" and "other stakeholders," maintain "any number of documents that describe products and vendors approved for AT&T Services to purchase directly or approved work on AT&T Services jobs." Defs.' Mem. at 11. Accordingly, Defendants contend Plaintiff's request poses an unreasonable burden on AT&T Services. *Id.* at 10.

Plaintiff believes it has been "singled out" and that the entire approved products list is relevant because the lists will illustrate this unfair treatment by the absence of (1) "the use of a single manufacturer for a needed part;" (2) "products that have been approved for use, but denied permission to be used;" and (3) "products that were once approved, and are now not approved." Pl.'s Mem. at 10. That is, Plaintiff contends AT&T Services has not negotiated a sole source contract with a particular company regarding any of its products; thus, the use of Hilti anchors to the exclusion of Plaintiff's Seisco anchor constitutes an unfair or deceptive trade practice. *Id.* at 9.

First, the relevance of the entire approved product list appears dubious as it was last used by AT&T Services in the manner envisioned by Plaintiff prior to the relevant events underlying this lawsuit. Second, the entire approved products list is not probative of Plaintiff's claims of defamation and unfair and deceptive trade practices with respect to Plaintiff's product. Plaintiff believes it was "singled out," that other manufacturers of seismic anchors were chosen despite Plaintiff's presence on the approved products list. Plaintiff can effectively test this theory armed with the approved products list of seismic anchors, which Defendant has produced. That the entire list, containing a myriad of diverse and unrelated AT&T Services' products, would show Plaintiff as the only approved supplier not chosen by AT&T Services, is not reasonably calculated to show that by not selecting Plaintiff's seismic anchors over other seismic anchors, Defendant has violated established public

11

policy or is otherwise immoral, oppressive, unscrupulous or substantially injurious. Accordingly, Plaintiff's motion to compel with respect to RPD No. 29 is DENIED.

D.   Plaintiff's Request for Production of Documents No. 32

In RPD No. 32 to Defendant AT&T Services, Plaintiff sought "any and all documents, memoranda, approved products lists, or similar information, that show the preferred vendor for each part AT&T uses." In response to Defendants' objection, Plaintiff narrowed the request, and now seeks "[a]ll documents evidence [sic] correspondence to vendors or suppliers where you or AT&T have barred or advocated the use of a particular product." Pl.'s Mem. at 10. In response to a second objection by Defendants, Plaintiff "is willing to limit this request to the AT&T Services' department that handles seismic anchors." *Id.* Defendants contend as narrowed, RPD No. 32 is duplicative of RPD No. 14, both of which seek information "far outside the scope of what is discoverable." Defs.' Mem. at 11.

Plaintiff believes the documents are relevant to its unfair and deceptive trade practices claim because Plaintiff believes its product is on the approved products list but Defendants are barring vendors from using Plaintiff's product and preferring the anchor manufactured by Hilti. Pl.'s Mem. at 10. Plaintiff contends this action violates AT&T Services' internal non-endorsement policy and an internal policy regarding the decision-making process for product selection. *Id.* at 10-11. Plaintiff therefore seeks documents that show the "preferred" vendor for each AT&T product to determine if there are other products on the approved products list which are likewise not "preferred." *Id.*

As to the initial request, whether there are other products on the AT&T Services' approved products list that are not "preferred," as Plaintiff contends, is not probative of the reasons proffered

12

for the non-selection of Plaintiff's product nor relevant to Plaintiff's legal theory. Plaintiff fails to demonstrate how such documentation is sufficiently probative of his claims. As narrowed, the court finds the request duplicative of RPD No. 14. Both RPD Nos. 14 and 32 seek correspondence to any vendor of any product in which AT&T barred or advocated the use of any product. The court finds the narrowed request is overly broad for the same reasons set forth above regarding RPD No. 14. Finally, as to Plaintiff's willingness to limit this request to seismic anchors only, the court finds the documents produced or to be produced as described by Defendants are responsive to Plaintiff's document request and probative of Plaintiff's theory of its case. Accordingly, Plaintiff's motion to compel as to RPD No. 32 is DENIED.

### III. CONCLUSION

For the reasons set forth above, the court orders that Plaintiff's Amended Motion to Compel [DE-58] regarding document requests is DENIED.

So ordered, this the 17th day of November, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge