IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-591-FL

| | | |
|---|---|---|
| BOYKIN ANCHOR COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| LARRY WONG and AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Plaintiff's motion to reconsider [DE-95] the court's order dated 4 January 2012 ("the January Order") [DE-91], denying Plaintiff's motion to compel Hilti, Inc. ("Hilti"), a non-party, to produce discovery [DE-78]. Hilti has filed a response in opposition. [DE-104]. Accordingly, the matter is ripe for adjudication. For the reasons stated below, Plaintiff's motion is denied.

## I. PROCEDURAL HISTORY

On 4 January 2012, the court denied Plaintiff's motion to compel the production of documents associated with its request for production of documents ("RPD") number 13 and as the document request had been modified by Plaintiff. RPD No. 13, as modified by Plaintiff, seeks two sets of data regarding Hilti seismic anchors limited to the period of January 2006 to the present: (1) the total number of seismic anchors sold by Hilti to six companies (identified as Nortel, Lucent Technologies, Alcatel Lucent, Emerson, Newton Instruments and Telect) that have had, or wanted to have, prior dealings with Plaintiff; and (2) the total number of Hilti seismic anchors sold in the United States. Order [DE-91 at 6]. According to Plaintiff, this data is needed to provide a damages

floor and ceiling, respectively. *Id.* In the January Order, the court denied Plaintiff's motion, explaining as follows:

(1)   As to data necessary to calculating a damages floor, "Boykin bears the burden of producing the identifiers requested by Hilti so that Hilti can properly respond to Boykin's request;" and

(2)   As to data necessary to calculating a damages ceiling, the court found the discovery of Hilti's domestic anchor sales to telecommunications companies beyond the six identified companies relevant to calculating a damages ceiling according to Plaintiff's case theory. However, noting neither Boykin nor Hilti had disclosed the names of these additional companies nor had they discussed the burden imposed in seeking relevant anchor sales data from these intermediaries, the court advised Boykin and Hilti "to explore ways in which to identify and obtain [relevant domestic anchor sales data from the unnamed telecom intermediaries]."

*Id.* at 8, 11.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that "any order or other decision ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, no clear standard exists for the analysis of a motion for reconsideration under Fed. R. Civ. P. 54(b) other than its resolution "committed to the discretion of the court." *American Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (citations omitted); *Fleetwood Transp. Corp. v. Packaging Corp. of America*, No. 1:10MC58, 2011 WL 6217061, at *5 (M.D.N.C. Dec. 14, 2011). In contrast, under Fed. R. Civ. P. 59(e), a motion to alter or amend a final judgment may be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

Although the Fourth Circuit has made it clear that the standards governing reconsideration of final judgments under Fed. R. Civ. P. 59(e) are not determinative of the reconsideration of an interlocutory decision, *see Saint Annes Dev. Co., Inc. v. Trabich*, No. 10-2078, 2011 WL 3608454, at *3 (4th Cir. Aug. 17, 2011) ("The power to reconsider or modify interlocutory rulings 'is committed to the discretion of the district court,' and that discretion is not cabined by the 'heightened standards for reconsideration' governing final orders.") (quoting *American Canoe*, 326 F.3d at 514-15), courts have considered those factors in guiding their discretion under Fed. R. Civ. P. 54(b). *See Fleetwood*, 2011 WL 6217061, at *6; *see Mesmer v. Rezza*, No. DKC 10-1053, 2011 WL 5548990, at *3 (D. Md. Nov. 14, 2011) ("While the standards articulated in Rules 59(e) and 60(b) are not binding in an analysis of Rule 54(b) motions, ... courts frequently look to these standards for guidance in considering such motions .... " (internal citations omitted)); *Phillip v. GEO Grp., Inc.*, No. 5:09-CT-3115-FL, 2011 WL 4946769, at *4-5 (E.D.N.C. Oct. 18, 2011). Courts have also held that "[a] motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005) (citation omitted); *Akeva L.L.C. v. Adidas America, Inc.*, 385 F. Supp. 2d 559, 566 (M.D.N.C. 2005).

However, the court must also recognize that "[p]ublic policy favors an end to litigation and recognizes that efficient operation requires the avoidance of re-arguing the questions that have already been decided." *Akeva*, 385 F. Supp. 2d at 565. To this end, "a motion to reconsider is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter."

3

*Fleetwood*, 2011 WL 6217061, at *6 (quoting *Hinton v. Henderson*, No. 3:10-cv-505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011); *see DirecTV, Inc. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (ruling that a motion to reconsider is improper where the motion "merely asks the court 'to rethink what the Court had already thought through-rightly or wrongly'") (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

### III. DISCUSSION

Plaintiff has moved the court to reconsider its earlier order based on several assertions. First, Plaintiff argues that Hilti should have the ability to quickly determine which telecom companies were ordering seismic anchors and the quantities of these orders because Hilti was able to produce this information when Plaintiff's owner, Matthew Boykin, was employed by Hilti twenty years ago. Mem. in Supp. of Mot. for Reconsideration ("Pl.'s Mem.") [DE-96] at 4. In particular, Plaintiff describes a strategic business team within Hilti specifically tailored to the telecom industry and states that this department markets products to companies within the telecom industry and generates monthly reports showing the number of each product sold to a customer. *Id.* at 4; Affidavit of Matthew Boykin ("Boykin Aff.") [DE-96-1] ¶¶ 11, 14, 15. Hilti's response however makes clear that its business model has changed significantly and that Hilti no longer tracks sales to these intermediaries. Affidavit of Martin Schofield in Opp. to Pl.'s Mot. for Reconsideration ("Second Schofield Aff.") [DE-105] ¶¶ 4, 5; Resp. Brf. of Non-Party Hilti, Inc. in Opp. to Pl.'s Mot. to Reconsider ("Resp.") [DE-104]. Schofield explains that Hilti maintained the strategic business team until the mid-2000s when Hilti reorganized its focus on service providers rather than intermediaries. Second Schofield Aff. [DE-105] ¶¶ 5-7. As a result, telecom client lists have not been maintained. *Id.* Schofield explains that the shift in focus was driven by the service providers' role in specifying

4

parts that intermediaries must use in building any site to be used by service providers. *Id.* ¶ 7. Moreover, as it relates to the factors the court must weigh when faced with a motion to reconsider, Mr. Boykin's recollection of Hilti's business model, though apparently outdated, could have been presented in Plaintiff's motion to compel and is not an appropriate basis on which to reconsider the court's earlier order.

Second, Plaintiff posits that Hilti may have misrepresented its inability to retrieve the requested data. Plaintiff points to a 2007 e-mail exchange between Enid Crawford, a Hilti sales representative, and Jevon Pool, a representative of Goodman Networks, a telecom company. Ex. 3 [DE-96-3] at 1. In the exchange, Pool inquires about the capabilities of a particular seismic anchor to meet the particular job specifications for AT&T. Crawford responds providing information on the AT&T specifications and states that "[t]he part number on the Flash has changed since then to 284908 which Goodman Networks has ordered in the past." *Id.* (emphasis added). As proof that Hilti does not require an account number, name and/or address in order to retrieve the requested customer order data, Plaintiff points out that in his inquiry to Hilti, Pool does not provide an account number, company name and/or address, although the name of the company is contained within the e-mail itself. Pl.'s Mem. [DE-96] at 5. Plaintiff offers further a 2004 e-mail from Vince Caggiano, an individual Plaintiff describes as a high-ranking Hilti employee, to Larry Wong regarding the use of the HSL-3 anchor in which Caggiano states that "demand for these anchors [HSL anchors] the last three months was 4 times the monthly average for the prior twelve months." Ex. 4 [DE-96-4] at 1. Based on these two e-mails, Plaintiff concludes that Hilti's alleged requirement for account numbers or company names and address information is a fabrication. The e-mails however are of a limited context as there could be a variety of reasons for Hilti's response as contained in the e-mails Plaintiff

5

has included. Plaintiff's conclusion is based upon speculation and is not strong evidence that Hilti has misled the court as to its abilities to retrieve the requested data. Moreover, Matthew Boykin admits that during the time of his employment with Hilti, client accounts were maintained either by account numbers and/or names and addresses. Boykin Aff. [DE-96-1] ¶ 6.

Next, Plaintiff suggests that Hilti and AT&T are engaged in collusion to avoid providing the requested documents. *Id.* ¶ 34; Pl's Mem. [DE-96] at 6-7. Plaintiff has identified an e-mail dated June 21, 2011 from Jonathan Geserick, an AT&T employee, to Christie Rooney, a Hilti employee, and two other individuals. Ex. 7 [DE-96-7] at 1. Geserick's e-mail states

> I wanted to give you a "heads up". AT&T is the Defendant in a lawsuit regarding [sic] related to Seismic Anchors. I just wanted to let you know that I received word this morning that the Plaintiff in this suit (Boykin Anchor) will be serving Hilti with a subpoena for records related to this matter. If your attorneys have any questions, they may contact the AT&T attorney handling this matter. Please find his contact information below.

*Id.*

In further support of this argument, Plaintiff states that despite having deposed Defendants, Plaintiff was unable to learn how to gather the number of Hilti HSL series anchors installed on AT&T installations, an alternative manner to determine the requested information according to Plaintiff. Pl.'s Mem. [DE-96] at 12. Plaintiff's motion states further that Plaintiff's counsel has learned further "upon information and belief" that counsel for AT&T and Hilti have had additional conversations outside the presence of Plaintiff's counsel. *Id.* at 7. Plaintiff does not describe these alleged conversations. Plaintiff surmises that these circumstances make it apparent that Defendants and Hilti are engaged in collusion to prevent Plaintiff from obtaining damages information. *Id.* at 13.

Plaintiff's conclusion is equally speculative. The lack of knowledge by deponents and the described communications between Hilti and AT&T do not demonstrate an agreement between

Defendants and Hilti to avoid discovery obligations. The court notes that although discovery has been contentious, according to Plaintiff's motion to compel, the only focus of which is a single RPD response, Hilti has provided other information responsive to Plaintiff's discovery requests. Pl.'s Mot. to Compel [DE-78] ¶ 3.

Plaintiff next argues that the court should compel Hilti to produce the requested sales information because Hilti no longer markets the HSL anchor series to any industry other than the telecommunications industry. Pl.'s Mem. [DE-96] at 9-10; see Supp. Mem. of Add'l Pts. & Auth. [DE-101] at 1.[1] According to Plaintiff, Hilti should therefore be able to easily determine the number of HSL series anchors (including sizes 10 mm, 12 mm and 16 mm, but not the HSL-3 anchors) that were sold in the United States between 2005 and 2010. Pl.'s Mem. [DE-96] at 9; Supp. Mem. of Add'l Pts. & Auth. [DE-101] at 4.

Hilti responds that while HSL and HSL-2 anchor series were discontinued in the 1990s and 2004, respectively, during the transition to the HSL-3 series anchor, some customers preferred not to use the HSL-3. Second Schofield Aff. [DE-105] ¶9. For that reason, although HSL and HSL-2 production had ceased Hilti continued to produce "special order" anchor variations such as the HSL-I ("eye"), HSL-B, HSL-G and HSL-G-R. Id. Additionally, the "special order" anchor customers were not limited to the telecom industry; rather, the HSL-I anchor, for example, has multiple applications other than telecom. Id. Moreover, the e-mail correspondence referenced by Plaintiff appears to corroborate Hilti's response regarding the nature of the "special order" anchors. See Ex. 4 [DE-96-4] at 1 ("These are the anchors that will fall under the 'special order' part of the program."); Ex. 8 [DE-

---

[1] In his affidavit, Matthew Boykin states "through the discovery process" he has learned that Hilti discontinued the sale of the Hilti HSL series anchors that compete directly with Plaintiff's anchors, replacing them with the HSL-3 anchor. Boykin Aff. [DE-96-1] ¶¶ 16, 17.

7

96-8]. Hilti does not manufacture a "telecom only" seismic anchor; rather, telecom customers purchase HSL-3 anchors and "special order" anchors have been made available to Hilti customers and were not limited to telecom customers. Resp. [DE-104] at 7; Second Schofield Aff. [DE-105] ¶ 10. Plaintiff's argument however is misplaced. Indeed, as pointed out by Hilti, Plaintiff's proposed methodology to obtain the requested damages information -- requiring production of sales figures for any HSL anchor plus "special order" anchors but not HSL-3 data -- would prove to be both under-inclusive and over-inclusive of Hilti anchor sales to intermediaries in the telecommunication industry, which has been determined to be the scope of Plaintiff's discovery of Hilti. *See* Second Schofield Aff. ¶¶ 9, 10; *see* Order [DE-91].[2]

Finally, Plaintiff argues that since the court's order, Plaintiff has discovered thirty telecommunications companies by name that appear to purchase Hilti anchors. Pl.'s Mem. [DE-96] at 2-3, 11; *see* Boykin Aff. [DE-96-1] ¶ 23 (identifying 27 previously identified and "additional" telecommunication companies to whom Plaintiff could have marketed and sold anchors). Plaintiff states further there may be other telecom companies which would purchase anchors about which it has no knowledge and may discover only through the information to be produced by Hilti. Pl.'s Mem. [DE-96] at 3. Plaintiff opines that each of these companies may have numerous different shipping addresses and/or billing addresses all of which would create a different account number. *Id.* Plaintiff states further that in the January Order, this court misapprehended that Plaintiff had

---

[2]Plaintiff argues that since the expansion sleeves of Hilti's HSL series anchor (not the HSL-3) is manufactured in Europe and is no longer marketed to any industry other than telecom, Hilti should be able to calculate the number of HSL series anchors sold from 2005-2010 by adding the number of HSL series expansion sleeves that were shipped to the United States then subtracting the number of HSL expansion sleeves remaining in inventory at the end of 2010. [DE-96] at 10. For the same reasons discussed above, this alternative would be unavailing.

8

access to the shipping addresses of the six companies it had already identified by name. *Id.* Plaintiff states it does not have access to the account numbers and/or exact name and address of any of these companies. Boykin Aff. [DE-96-1] ¶ 28. In order to obtain the requested sales material, Plaintiff would be required to serve discovery requests on twenty-nine of these non-parties. *Id.* ¶ 30. Plaintiff argues this is unduly burdensome and would require further extension of the discovery and other case deadlines. Pl.'s Mem. at [DE-96] at 12. Plaintiff insists Hilti has the requested data "at its fingertips" and that Hilti should be compelled to produce the requested data because Hilti has "the ability to gather that information without need for Hilti account numbers and/or exact name and address." *Id.* at 12. Plaintiff's argument is premised on the assumption that Hilti's reasons for not being able to comply with its discovery request are bogus, that Hilti is in fact able to produce the requested sales records without an account number and/or customer name and address. In its order denying Plaintiff's motion to compel, acknowledging both the relevance of some of the material sought by Plaintiff and the burden imposed upon Hilti, a non-party, in producing the material, the court directed the parties to seek common ground on which the requested materials may be produced. *See* Order [DE-91] at 4 ("When considering the propriety of enforcing a subpoena, a trial court should consider 'the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.'") (quoting *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451-53 (E.D.N.C. 2005)); *see* Fed. R. Civ. P. 45(c)(1) (stating "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."); *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) ("Courts are required to balance the need for discovery against the burden imposed upon the person ordered to produce documents, and the status of a person as a non-party is a factor

9

that weighs against disclosure.") (citations omitted). Plaintiff however persists in its position that Hilti's proffered inability to produce the information as requested is a fabrication. The court is not so convinced and finds insufficient grounds on which to reconsider its January Order.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion to reconsider [DE-95] is denied.

So ordered, this the 20th day of March, 2012.

_____
Robert B. Jones, Jr.
United States Magistrate Judge